Our first case this morning is BOSCH v. PYLON, and after that first case, the Court will take a brief recess. This argument by Pylon and the government on the questions presented for en banc review is devoted to showing that a court sitting in equity conducting an accounting historically could reach and consider issues of damages and willfulness. That, I think, is the wrong approach to the questions this Court presented. The real key question that will help us unravel the legal issues in the two en banc questions is whether a jury trial on these issues is an accounting. Is that really the key question, counsel, or is the key question the role of the statute specific to patent cases with respect to the accounting? I believe, Your Honor, that the key question is, in fact, whether the procedure that is awaiting us back in the non-final district court action is whether the statute has any impact. Oh, no, I think the statute is critical because it is the statute that gives us the word accounting. And so the question is whether what we have sitting in Wilmington in district court is a judgment that is final except for an accounting. So we must know, then, whether the jury trial on damages and willfulness that is awaiting us is an accounting. Yes, it has a definition where the damages are an accounting. Correct. That's the question, is whether the jury trial is going to be an accounting. Now, in fairness, you say that they went off in terms of what their argument was, but wasn't that because you spent most of your blueberries setting up that straw man that was easy for them to knock down? It certainly was not intended to be a straw man, Your Honor. I agree that when you read our brief, we're focused on the historical nature of what an accounting is to try and answer the question that I posed. And historically and traditionally for a long time, an accounting was a procedure with a special master determining profits. Now, it is true that particularly after 1870, the court sitting in equity could look at damages issues also. Right, but that's not the question we asked. We didn't say if a court sitting in equity or a court otherwise authorized to conduct an accounting, we didn't ask whether they could also consider damages. We asked whether or not a jury trial on damages impacted our jurisdiction under 1292C. And that's really the question. I agree. And you didn't get to that in your grain brief, really. Well, I hope that's not the case, Your Honor. But if it is, then at least we got to it in the reply brief. So to be clear about this, you agree that if there were a damages determination made by a special master, that that would permit the inlocutory appeal to occur, right? Almost. I would agree that if we had an accounting, which – and I think the most important case that nobody cited, either we didn't, nor did the government, nor did Pilon, is Dairy Queen v. Wood, the Supreme Court case from 1962 talking about the distinction, the modern, relatively modern distinction between law and equity. Well, what's the answer to the question? Because McCulloch's Supreme Court case involved a situation in which an accounting and damages had been reserved. And the Supreme Court made clear that that was within the statute, that those two questions could be reserved, right? I read McCulloch as a case where what was waiting in the district court was, in fact, an accounting. And damages. An accounting including damages, because as we just discussed, an accounting in front of a special master in equity would include damages calculations. And the reason that it would include that is because you could recover damages if your damages were greater than the infringer's profits. Well, suppose there were only a damages issue before a special master. Would the statute apply in those circumstances? Yes, it would if the damages issue was an accounting referred to a special master. And that's the discussion in Dairy Queen v. Wood where the plaintiff in that case, it was a trademark infringement and contract case. The plaintiff in that case pled in their complaint for an accounting, really an accounting of the money that should have been paid under the contract. The defendant sought a jury trial on the issue. The district court did not grant a jury trial finding. There was no Seventh Amendment right to a jury trial because what was being sought was an accounting in equity. It went to the Supreme Court. The Supreme Court said, well, no, you labeled it an accounting. You pled for an accounting, but really what you're seeking is money damages. And really, except in extraordinary circumstances, that's a legal issue for the jury and for the court sitting at law and action on the case. But why should it make a difference? If a damages trial taking place before a special master comes up in bifurcation and immediate appeal, why does it make a difference if that issue is before a jury rather than a special master? Because if it's before a jury, it's not an accounting. I return again to the Dairy Queen case, which explained in what circumstances one could refer these kinds of damages issues to an accounting before a master. Only in cases where the damages issues and the accounts between the parties are so complicated that only an equity court can unravel them. That's an exceptional case where the burden of showing it is on the plaintiff, which the Supreme Court noted will indeed be a rare case. But if we had a tremendously complicated, unusually complicated set of damages, and we as the plaintiff preferred to take that to a special master, we could, if we showed that it was sufficiently complicated, which would be a very high standard under this case, in fact, have an accounting. And then the case would fit squarely into what Congress looked at last in 1927. Interlocutory appeal depends on whether it's a complicated case or not? Yes, it does. It depends on whether it's an accounting or whether it's a jury trial. Mr. Handelman, if we don't agree with you on the accounting, willfulness is another issue. And if we would agree with you on that, then we still have no jurisdiction, right? That's correct. But willfulness relates to increased damages. So if we don't agree with you on the accounting, then why wouldn't we have jurisdiction with respect to, why wouldn't there have been finality with respect to, even if it didn't include willfulness? Well, you know, from one point of view on this, I agree with Pilon, that if you look historically, that the test, as I said, the test that Pilon and the government applied is, were issues of damages and willfulness handled by courts sitting in equity? Which the court in Delaware is not. The court in Delaware is sitting at law. And they're correct that damages were enhanced by equity courts, and the same kinds of determinations that are made in willfulness were made, you know, and recommended to district court judges, just as damages issues were. Now, those damages issues were reached only when the profits were found to be less than damages and somebody sought to prove them. Really, the classic historical archetype of an accounting is a special master looking through parties' books and opposing proofs to see what the infringer's profits really were. But I agree that willfulness was tied up in that. Now, in our brief, we explained, by way of showing that a jury trial is not an accounting, we pointed to all the differences between what a jury and a district court would look at in making willfulness determinations and what is the traditional hallmarks of an accounting. So, from that point of view, I could see, you know, a ruling that willfulness is not including in an accounting, or a willfulness jury trial is not an accounting. But I agree with Pilon that, you know, it was part of the work that a special master sitting in equity would do as part of an accounting. Because that's what equity is. Correct. So, assuming we're in a legal proceeding, like we are, as it relates to willfulness, do you see a distinction between a determination of whether or not infringers were willful and a determination as to what the impact of that finding would be? Well, I believe that there is a Seventh Amendment right to a jury trial on willfulness, on the fact of willfulness, as pointed out by some of the friends of the court. And that would seem to me to be one of the red flags that says this is not an accounting in equity. If it's a Seventh Amendment issue, then how could it possibly be an accounting? And thus, you know, a willfulness fact determination could not be part of an accounting. I would say that the enhancement by the judge obviously is not subject to that, and so it's a slightly different category. So, in the hypothetical situation, which I understand is not exactly the situation we have here, because neither determination has been made. But if in the hypothetical situation a judge or a jury had made a willfulness determination, had had a willfulness finding, but the judge had not yet assessed the impact of that, would that prevent the decision from being final, or could the decision be final at that point, assuming all other finality aspects are satisfied? I'm sorry, Your Honor. Are you asking whether the decision is a final judgment for purposes of the final judgment rule, or whether it's – Yes, for purposes of appeal. That's what we're talking about. Okay, no, I don't believe it would be a final judgment for application of the final judgment rule on appeal under 1295, nor because the court is not sitting in equity and the remaining decisions are not equitable ones, I don't think, under the current statute. I don't think that would qualify under 1292C too, either. If we agree with you overall, what happens to 1292C? Aren't we basically nullifying a congressional statutory provision? Well, certainly this court would not be nullifying anything. It's up to Congress. If Congress wanted to have an appeal in actions – That would be nougatory. Well, neither quite that either. I certainly would agree that if this court decides that a jury trial on damages is an accounting and issues that ruling en banc, then I think this court's appellate jurisdiction will be de facto expanded. And were this court to decide otherwise, then I think this court's jurisdiction obviously would not extend to cases like that, and thus the application of the statute would be narrower. I think Judge Lurie's question, though, really, is what would be left of 1292C? In operation, what circumstances – I understand you could just argue it's a historical artifact and we should just ignore it, but assuming that we think that Congress would have gotten rid of it had they intended for us to completely ignore it, in what context would it still survive? It would not just be a historical artifact. First of all, in particularly complicated cases where somebody actually sought an accounting, of course it would have application. And those are the circumstances for which the statute was designed. When we look historically at the 20s and the 30s when the statute was designed and first applied, those accountings were tremendously complicated and tremendously lengthy, certainly much more lengthy than five or six hours of testimony by experts in front of a jury, which is what our jury trial is. So it would apply then. When would it happen now? I mean, since there is no more accounting in utility patents for the infringer's profits, I mean, the statute would just be limited to design patents, right? Well, that's why I pointed to the Dairy Queen case, because I think in limited circumstances, and I agree it would be very limited circumstances, I think a utility patent case could still go to an accountant. Where it's complicated. Where it's complicated enough that the plaintiff demands it and approves it to the satisfaction of the standard in Dairy Queen, which is high. And design patent cases. But the plaintiff would have to waive a right to a jury trial, right? Well, I don't think so. I think that was the whole point of the Dairy Queen case, is that there's no right to a jury trial in equity. That's what the plaintiff was trying to accomplish in Dairy Queen, really, was avoid a jury trial. And that's why the Supreme Court set the standard so high for it to be an accounting and not an action for damages, is because the paramount, you know, the merger of law and equity, one of the paramount things that Congress directed is that the Seventh Amendment right to jury trial be preserved. So that's why the standard is so high, to take us out of law, put us in equity for money damages, where we have an accounting. You would do it in those cases. You would do it in design patent cases. You would do it in all of the day-to-day situations where, for example, the jury finds a royalty rate and we have to assess what the sales were and apply that royalty rate up to the date of the judgment, for example. And we would apply it in post-judgment future royalty situations, where what's waiting is to sort out what the defendant has and is selling. And that's an accounting, and that would be fine. You say it's limited to equitable proceedings, but what about the fact that in 1948, Congress specifically deleted from the statute the inequity language? They did that finally in 1948, and one of the things I would like to do is run very quickly through the history. But in 1948, as a consequence of the merger of law and equity that Congress permitted in 1934 and that the Supreme Court implemented in 1937, 11 years later, 1292C was finally rewritten, and that was really a ministerial kind of rewriting to reflect the merger of law and equity. They substituted civil action for suits and equity. They substituted the word judgments for decree, and the committee notes indicate that this is in view of Rules 2 and 54 of the Federal Rules of Civil Procedure. Rule 2 says there should be one form of action. Rule 54 is judgments. None of these qualifications that you're telling us about were inserted into the statute, although there were plenty of opportunities to do so. So what lines, you know, the first line you'd have us draw then is whether it is or is not a jury trial of liability. Oh, I think really the, yes, because whether it's a jury trial of liability is an indicator of whether the court is sitting in law or equity. And whether what you have are damages issues or an accounting. No, then leave behind the rest of that. Don't call it a jury trial. That is whether it's a jury to start with. I agree. So that if these various issues that you're raising may or may not be decided by the court, but there's no jury to defer to, that then would affect, I gather, in your view, whether it is or isn't final. The, when there's a jury trial, it is to me an easy case. But then you wouldn't hear a finality without the accounting. To me, when there's a jury trial, it is an easy case because it is apparent that there is no, that that can't possibly be an accounting if it's a jury, if it's a jury to do it. I would agree. And it's more complicated to tell when it's a bench trial. Now, when it's complicated, the issues are complicated of the liability or the thought processes of the judges. Well, as Your Honor pointed out, for example, the standard of review of a jury trial is very different from that of a bench trial. The standard of review of a bench trial is, as it turns out, identical to the standard of review of an accounting conducted by a master approved in whole by a district judge. And so from that point of view, the standard of review is the same. We have a very simple, straightforward statute. Short, a few words. Correct. It's been in existence for quite a long time. Yes. We've lived with it. You're telling us that it's wrong and we have to do this and that. And some appeals can be taken at one stage, some at another. Different decision makers affect the appellate process. Yes. So it's about complexity. We would outdo the complexity of the liability, perhaps, for the accounting phase. I think it's actually, I think Your Honor's correct that it is a simple statute and it's relatively simple to look backwards and apply it and say this is a statute that was drafted to permit a narrow exception to the final judgment rule. The Senate committee reports indicate that it was prepared specifically to deal with the very narrow set of facts where a patent expires during the litigation. Well, if it's permissive, why can't it just be a matter of discretion on the part of the district judge as to whether or not it's final after the liability phase? And the reason for that is the paramount importance of the final judgment rule and this Court's strictly limited jurisdiction for interlocutory appeals. In that context, counsel, to what degree are issues in a willfulness jury trial intertwined with the issues in the liability jury trial? Well, I think as a number, as we indicated in our brief and as a number of the friends of the Court discussed in much greater detail, especially post-Seagate, the factual issues of willfulness are inextricably bound up with the liability issues on infringement validity. All of those things are really in some sense the same kind of question and many of the facts are going to overlap and I certainly, you know, if a case is bifurcated like this and then returns for a jury trial on willfulness, I think it's going to be very hard to sort the set of facts for the second jury to say, look, you must be presumed, the first jury is presumed to have found this, this and this and the only question for you is whether, in light of that, the defendant's behavior was subjectively reasonable, you know, if the objective standard is assumed to have been met. So I think it's a mess. It's a mess. In your decision, has Seagate changed the dynamics? No, I think, well, before Seagate, I have to say, you know, I looked in the 1904 walkers on patents that we had in our library and I looked at a lot of these other things that have been cited and I did, it's very hard to tell what the criteria were back in 1904 or 1927 for enhancement and it seemed to be, what the treatise seemed to be saying is that the judge, the enhancement decision was the same in equity in an accounting as it was at law and that's explicit in the equity statute at the time and the judge in both cases would look at the damages figure and decide if it was right and if he or she didn't think it was right, would escalate it up to triple and the criteria for doing that and whether that's parallel to the criteria in Seagate, I think that was a process that evolved from the 19th century, you know, to now the 21st century, how parallel exactly it is, I can't say. Isn't your position diminished by a recent opinion in Bard which calls into question what piece of willfulness is actually a factual versus legal question for the judge? I think that certainly, I mean, that changes how much, but I think even after Bard, there's still jury issues to be determined in willfulness. Well, why isn't the district court in the best position to determine whether willfulness should be tried together with liability or should wait until the damage is fair? I mean, certainly if we hold that there's a right of inlocutory appeal where willfulness has been reserved, we're not compelling the district court to reserve the issue, right? The district court can make a judgment, well, let's be better tried together with liability. It can do that, right? I agree. The district court certainly has discretion, subject to Seventh Amendment concerns, which were not really fully vetted in this case, but certainly has the discretion to try things in pieces or not in pieces. The question is whether the court, whether the procedure between the district court and this court can be that those issues can be stayed by the district court and remain undecided while the merits are appealed to this court as a matter of interlocutory appeal. But certainly the district judge can decide what should be tried together and what should be tried separately. When you say interlocutory appeal, the way 1292C reads, it's an appeal as a right, is it not? It is. So if we agree with you, assuming that there's any bifurcation, the minute a liability determination is made, the time to appeal as a right begins to run and both the party would have no choice but to appeal if there's some delay before the damages trial and the court would have no authority to prevent an appeal. Isn't that right? I think that's absolutely correct. One of the friends of the court indicated in their brief that a district judge could avoid this by purposely delaying decision on post-trial motions to kind of gain the system and keep the clock from starting. But I agree with you that that's exactly what would happen if this, it would still be an interlocutory appeal, but if it were an interlocutory appeal. Mr. Harmon, I think you said earlier that if we don't agree with you, we will have expanded the law concerning how it constitutes finality. Isn't it correct that if we do agree with you, we're diminishing, we're contracting the law in terms of current practice? I don't know how many cases have come or will come to this court in this particular procedural circumstance. But we'd be changing the law. I don't, that's what I'm not sure of, Your Honor, because we had a discussion at the panel. I'm not sure that you didn't say no. I didn't because I'm being cautious, Your Honor. We had a long discussion at the panel argument about this court's scattered previous mentions of this statute in similar contexts. And as we indicated in our brief, I don't believe that there were any that considered the issue and found otherwise, and found that a jury trial isn't accounting. They came up in sanctions contexts. They came up in contempt hearings. They came up as asides and opinions. I'm just not sure whether there was really ever an opinion squarely on point. I think in terms of policy for the future, where this affects the future, certainly after eBay, there will be more cases where plaintiffs are not seeking an injunction, and thus there will be more cases in which interlocutory appeal pursuant to the injunction proceeding is not available.  I would also say that this court has noted that historically there were relatively few jury trials until this court was created. And there really isn't a lot of history, therefore, for this situation to have been vetted. I'll also note in terms of expanding or contracting the court's interlocutory appeal jurisdiction, really what we're talking about is unless there's a final judgment, a court of appeals has no jurisdiction absent a statute to the contrary. We have here a narrow statute drafted by Congress in 1927, amended in 1948 to conform to the merger of law and equity, otherwise not substantially amended or considered. The Supreme Court's pylon and some of the friends of the court, including the government, have argued that the fact that Congress didn't step in to do anything means that, well, we should just sort of continue to pretend that a jury trial is an accounting. And I think looking at, for example, the Supreme Court's decision in the Helvering case explains why that's not correct. And it goes on at length to talk about the dangers of extrapolating from congressional non-action, Congress's supposed intent to de facto amend a statute and how dangerous that is. I don't think it's fair to here to say, for all the reasons it says in Helvering, to say that, well, Congress meant for this interlocutory appeal statute to cover damages actions at law, and that's why they didn't step in to fix it. Really what we need is a congressional amendment to permit this interlocutory appeal. Mr. Hanlon, do you want to save any of your rebuttal time? I certainly do, Your Honor. You're welcome to do so. Thank you. Thank you. Mr. Leach. Good morning, Your Honor. Good morning, Your Honors. May it please the Court. The two questions posed by this Court I think we felt revolved around two issues. The first of those issues, which was in their opening brief, as Judge O'Malley mentioned, we thought was whether or not the word accounting, as used in 1292c2, included issues of damages and willfulness. I think I've heard my opponent now concede that at least he now believes that is the case, and I think the overwhelming law and the precedent we have shows that was in fact the case. The second question, where I think the real argument here is, is whether or not the word accounting, as used in 1927 and again in 1948 in this statute, is somehow limited to a specific procedure or form, and in particular the courts of equity. I think the answer there is no, and we can go back and look at what Congress did to tell us that answer. If we look at what happened in 1927, there was a statute written that allowed for interlocutory appeals except for when there was an accounting remaining. In that statute, it required that it only be in courts in equity. If Congress had intended for accounting to mean in equity only, it would not have needed to add those words to the statute. So by their reading of the statute and putting in equity into the definition of an accounting, you're rendering the words in equity elsewhere in the statute superfluous. Can you address the Dairy Queen case? I have not specifically looked at that, but my understanding of that case, and there's other cases in that line such as the Root case, which is a U.S. Supreme Court case, which really gets to the point, and I think this is again in our favor, that in the Root case in particular, the U.S. Supreme Court found that in a situation where there wasn't an injunction, it was a court of equity, there wasn't an injunction because the patent had expired, the party could not proceed in a court of equity just on an accounting because that was not in and of itself part of the equity court. It was just incidental to the injunction, which really brings us back to the point that all along from the beginning... Okay, but what about the Dairy Queen case where the court said that unless the party stipulated to an accounting procedure or there was some express, special, narrow circumstance, that otherwise where there's a right to a jury trial on damages, that the proceeding is not, you may not order an accounting. That the rights with that jury trial on damages have to be protected. Well, I think it's the question of what is an accounting. And again, getting back to accounting... Isn't that what the Supreme Court differentiated between? Well, I don't think the Supreme Court ever said that an accounting is not a jury trial on damages. I don't believe that's what the Supreme Court said in that case. You don't see any difference where a jury trial on damages that still has to decide issues like what the reasonable royalty rate is, what the base against which that royalty rate should be applied, that that's different than a pure accounting? If you think of just the word in today's parlance, that may be the case. But in 1927, if we look back at the cases, if we look back at what was happening when that statute was enacted, it was very clear that an accounting included all those things that Your Honor just mentioned. And so therefore, when the statute was promulgated, that was the meaning of an accounting. It did include those other things. It included going through a damages analysis, and there were cases where the special master found a reasonable royalty or worthiness. But it was primarily addressed to the accounting of profits, which could take, as they said back then, years, as opposed to what we have now, which is the jury trial determination that sometimes only takes hours. I agree that back then the primary way this was done was through a special master. I disagree that today damages issues only take hours. I think damages cases can take months, if not years, when you go through discovery, problems with discovery, motions to compel, expert reports, and all the issues that go into the damages case. We just do them earlier now. And yes, it may only add a few days to the trial, but they add all sorts of cost and complexity to the case overall. If Congress intended to say that the finality rules that apply to all Article III courts do not apply to this court as it relates to something as important as jury trial rights and damages, don't you think it would have been more explicit? Well, I think they were a little more explicit, and that gets me to the change that happened in 1948. So as I said, 1927, they specifically required it only be in courts in equity. In 1948, when they took out inequity, they made it available to all courts, which includes the jury trials. And they also did something else. There were two words in there that were a little subtle, and I apologize these weren't in our brief, but we weren't really sure this is where the argument was going to go based on the initial brief. The words were ordering of. They took out the words ordering of and accounting. And the reason, at least I believe they did that, is when they opened this up to all courts, including jury cases, they were no longer saying this is limited to courts of equity, where we typically would order an accounting to a special master. Now, if they wanted to continue that practice of ordering it to a special master, as my opponents contend, why wouldn't they have let those words in? My reasoning is they took those out because they were broadening this. They were broadening it to all courts, not just courts of equity. And do you agree that what, under your theory, that what they would have done is will have created an appeal as of right that a district court could not prevent? Well, the district court... And we could not prevent. The district court can certainly always prevent it, and that's the issue of bifurcation. That's the issue of bifurcation. And whether or not to allow that to go forward is what, as I think Judge Dyke pointed out, that's the district court's decision to make, what makes the most sense in that particular case. Right. All right. But the district court could never have a circumstance in which any infringement or validity determinations were made and there was a bifurcation of damages for even a short period of time. The district court can't prevent the appeal. And the party's time to appeal begins to run once that liability determination occurs. Is that right? Once they enter the final judgment. I mean, the court could avoid entering final judgment, as I think we pointed out, to avoid that. So the only way the district court could prevent it would be to game the system as you're... Well, I don't think it's gaming the system. I think it's the court controlling its docket. And, again, I think it comes back to the bifurcation question. A lot of the issues that we're talking about here, whether there's policy reasons and overlap and things like that, that gets back to the question of should it have been bifurcated to begin with. And that's not the issue in front of the court today. The issue in front of the court today is whether they have jurisdiction under this very specific statute that I believe has very well-defined terms. What about willfulness? Different field, correct? Certainly the subjective problem, the questions that go to a jury, which implicate intent and a very fact-based. Why is that not too broad to fit within your definition in the context? Fair question. And I think when everybody looks at it initially, it sounds like it's something different than an accounting. But, again, we have to go back to 1927. We have to look at what did that mean at that time and what an accounting meant at that time was damages, including enhanced damages. The only thing willfulness relates to is the damage amount. We don't use willfulness for any other purpose in that aspect. But the calculation of the damage amount, I mean, we can split it as some of the parties have. But they're not talking about the calculation, the district court deciding whether to double or triple or nothing. We're talking about the jury determination with respect to the subjective problem. Correct. And I feel that is no different than the issues you go through with damages on panduit factors, of determining whether there's marketing capacity, manufacturing capacity, whether there's acceptable alternative infringing, non-infringing alternatives available. So it's really just all those issues, while, yes, they may touch on more substantive issues, all relate to one single thing, and that is the amount of money at the end of the day that's going to be paid from the infringer to the patentee. And that's when you go back and look at the congressional history. That's what Congress was trying to avoid. They were trying to say, let's find out what the liability is. Let's draw a line here. Everything else that deals about with how much compensation is to be paid, let's hold off on that until we're sure. And the appellate courts had an opportunity to determine whether that liability is right because we spend all this time, money, and effort, and with willfulness, you're having people waive privilege and you get into other issues where if we can hold off and make sure that's necessary first, Congress is saying that's what you should do. So what's your response to Bosch's assertion that willfulness issues and liability issues are inextricably intertwined? Well, I think the answer, Your Honor, gets back to this bifurcation issue. It's an issue for the judge at the district court to determine. But for us it's an issue of finality, isn't it? For you it is an issue of finality. If the court has determined it was proper to bifurcate. So if we're looking at an appeal that comes to us and willfulness issues have been left open in view of the plain meaning of the statute or the plain words, how can we say that we have a final judgment before us? Well, you have a final judgment before you because everything is complete other than accounting based on the definition of accounting from back when the statute was promulgated. This court may have added additional tests and procedures and guidelines we look at for issues like willfulness, but that cannot divest this court of jurisdiction that was granted by Congress back in 1927, 1948, and 1982 through this statute. But at that time the special master would look at willfulness issues as well, and Congress didn't include willfulness in the statute. Well, I disagree, Your Honor. Respectfully, I believe that Congress did include willfulness in the statute by calling it an accounting and using the common meaning of accounting at the time that it initially enacted the statute. Why wouldn't they have said willfulness and an accounting? Well, because for one, when they originally did it, that was the well-understood reason. In 1948, when they redid or amended the law, they didn't need to because that's what the courts had been doing. They had been including willfulness. We've got a number of cases. That's exactly what had been happening. So they didn't have to further define that. They understood that was included. In 1982, when they formed this court, they again amended the statute. They didn't have to include willfulness because all the circuit courts that were out there dealing with this issue were finding that willfulness was, in fact, part of an accounting. So they didn't have to make that definition. It would have been superfluous. Mr. Leach, before the merger of law and equity, could a jury come back and say we find unpleasant? I do not know the question of that. I do not believe so, Your Honor. It seems like an issue of equity. Just in closing, Your Honors, in 1927, when Congress enacted the predecessor to this statute, it recognized the great burden of expense it was obviating by allowing appeal of liability before an accounting for monetary awards. Although the particular procedures for this accounting may have varied and changed through the years, the meaning of accounting, as it was promulgated in 1927 and again in 1958, is not in the patent and the purpose of this statute to allow the deferral of damages if the issue remains. This isn't a situation where they have a lot of case law on their side and we have a lot of case law on our side. This is a situation where this Court's precedent in Ray Kalmar, in Callaway, in an unpublished case, SRI, goes through these very issues and talks about it specifically and comes out the way I am advocating today. Well, wouldn't you say it goes through all of those cases? Kalmar was in the context of a sanction situation, correct? Can I respond to that? I think that is even greater than maybe a jurisdictional issue. You're looking at whether or not someone was lying to the Court, whether to sanction someone, and they clearly held that as correct. It is true that other than Kalmar, the other cases don't actually say, let's address whether or not a right to a jury trial falls within this bound of accounting. They just assume that it did because of Kalmar. So it's not like we have case after case after case analyzing this issue with the care and thought that we're doing today and all coming out in one way. Isn't that right? I agree. There are a handful of cases that without analysis just assumed. That is correct. Well, we have a handful of cases that just assumed. We do have other cases that did do more of an analysis. One of those is the unpublished SRI case where Judge Nese very clearly went through this issue on both damages and willfulness and found exactly the point we're seeing today. But my point is, those cases, while maybe assumed, which we assume the Court is looking at its jurisdiction and considered its jurisdiction in those cases, and the case where Judge Markey clearly said in Ray Kalmar, this is the law. In fact, he went so far as to say it was reprehensible for the other side to even argue that wasn't the law, in a footnote. But my point is, compared to what they've provided, which is really no support for their side, that is the law that we've been following. We think that is also supported by the statute. It's not upon this Court to simply come in here today and say we're going to change it just to change it. I think it's this Court found, and I understand it's an embossed decision, and the Court can do what they want. I was going to say, all of those are panel cases, right? Absolutely correct. It's the point of an emboss, right? But as Judge Markey said in the Southbrooke case back in 1982, to proceed without precedent, deciding each legal principle anew would for too long deprive the bar on the public of the stability and predictability essential to the effort of a free society that lives under the rule of law. And I think that's the case here, where we don't have overwhelming reasons to change what we've done in the past. So I would ask that the Court not do so. Thank you. Mr. Leach, Mr. Haneman, you have four minutes. All right. In my four minutes, Your Honor, I would like to run through just very quickly a little of the history of this to put the law equity distinction that we've been talking about in context. We don't have to go back very far in history. We only need to go back to maybe 1870 or so, which is when there were two separate statutes at that time. There was a statute that provided for an action on the case, which would be an action at law in front of a jury for damages, and a separate statute for a bill in equity. That was Supplemental Appendix 7 and 6 of our brief, those two statutes. And the equity statute allowed one to seek damages as well as profits, interpreted, as I said, in the treatises, to allow damages. You look at damages when the profits are insufficient. Now, even then, I think, if we look at Chisholm's discussion of the distinction between law and equity, for example, even then, it was long understood that you could go to equity only if you did not have an adequate remedy at law. Most of the time, people would seek an injunction, and that would mean they could go down the equity path and end up in an accounting for profits and damages. Those accountings became, according to all of the contemporary sources, a complete disaster, where just the accountings would go on for, I think it was described as half a generation, and cost more than the money anybody would ever get back. And between that and the loophole that sprang up when somebody's patent would expire during litigation, and so there would no longer be questions of an injunction, therefore, no one could appeal under the injunction interlocutory appeal statute. Congress in 1927 passed the statute that we're talking about, which was directed specifically to suit inequity, not to the then still existing parallel statute at law. Until 1948. Well, until 1948. In 1937, law and equity merged, but the two different patent statutes remained. Still a law statute, still an equity statute, even after the merger of law and equity, which merged the form of the procedures, but not the actions and the remedies. These were the powers of the court. Correct. It doesn't merge law and equity per se, it makes them a court of law and equity. Correct. Exactly correct. And those two different patent statutes were codified in 35 U.S.C., 67, and 70, and remained in parallel. One thing that I noted in the briefing was a reference to the first form complaint for patent infringement that was included in the statute now in the back of the federal rules, which you'll notice talks about an accounting. I looked at Moore's, the 1938 edition of Moore's, and that explained that that form was drawn from a bill in equity. In fact, from a Supreme Court case called the Mung case in 1937 that talked about the requirements for pleading in equity. So if we look at the form and we see an accounting, the reason is that that form is directed to a case in equity. And the courts continued to recognize the distinction between patent cases at law, patent cases in equity, including the Bonnet-Mills case, for example, which was a Second Circuit case from 1942. Then in 1946, the statute was amended to take the profits element out of the equity statute. Again, the law and equity statutes remain separate, but the Congress took profits out. That becomes important when we get to the Arrow case in 1964, which is when the Supreme Court actually enforced that distinction. We go on. We talked about the 1948 amendment, which if we look at the legislative history and the committee notes, was a formal amendment to conform to Rule 2 and Rule 54 and to reflect the merger of the powers of the court of law and equity together. I'm afraid we're going to have to stop at 1948. We didn't even get to 1952. All right. Sorry. Thank you, Mr. Haneman. All right. Thank you, Your Honor. Thank you. All rise. The Honorable Court will take a short recess.